IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| GARY M. BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:20-cv-586 |
| | ) | |
| CITIBANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITIBANK, N.A.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Joseph M. Rainsbury (VSB No. 45782)
MILES & STOCKBRIDGE P.C.
919 E. Main Street, Suite 1100
Richmond, VA 23219
804.905.6910 (Telephone)
804.905.6910 (Facsimile)
jrainsbury@milesstockbridge.com

*Counsel for Citibank, N.A.*

TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... III

**PRELIMINARY STATEMENT** .......... 1

**STATEMENT OF FACTS** .......... 2

**ARGUMENT** .......... 4

I. Plaintiff Has Failed to Join a Necessary Party. .......... 4

II. Plaintiff Fails to State a Claim for "Injunction." .......... 5

A. An injunction is not a cause of action. .......... 6

B. Injunctions are barred as a matter of law against intermediary banks. .......... 6

C. The complaint does not allege facts supporting any cognizable claim against Citibank. .......... 7

III. The Complaint Should Be Dismissed with Prejudice and Without Leave to Amend. .......... 9

**CONCLUSION** .......... 11

## TABLE OF AUTHORITIES

### Cases

*Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195 (4th Cir. 2014) ..... 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 5

*Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135 (4th Cir. 2019) ..... 5

*Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313 (4th Cir.1998) ..... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 5, 6

*Bloch v. Executive Office of the President*, 164 F. Supp. 841 (E.D. Va. 2016) ..... 6

*Copenhaver v. Rogers*, 384 S.E.2d 593, 595 (Va. 1989) ..... 9

*Glass v. Glass*, 321 S.E.2d 69 (Va. 1984) ..... 8

*Gunvor SA v. Kayablian*, 948 F.3d 214 (4th Cir. 2020) ..... 4

*Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427 (4th Cir. 2014) ..... 4

*Hughes v. Bank of America*, Case No. 5:07cv109, 2008 WL 3926552, at *3 (W.D. Va. Aug. 26, 2008) ..... 4, 5

*Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256 (N.D. Tex. 2014) ..... 4

*Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879 (W.D. Va. 2020) ..... 8

*Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176 (4th Cir.2009) ..... 2

*Taylor & Co. v. Bank of Am. Corp.*, No. 3:14-CV-92-MOC-DSC, 2014 WL 3557672 (W.D.N.C. June 5, 2014) ..... 8

*Terry v. Bank of Am., N.A.*, 350 F. Supp. 2d 727 (W.D. Va. 2004) ..... 9

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01 CIV. 10726 (LAP), 2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ..... 9

### Statutes

Va. Code § 8.4A-101 ..... 9

Va. Code § 8.4A-104 ..... 3

Va. Code § 8.4A-301(b) ..... 10

Va. Code § 8.4A-302(a)(1) ..... 10

Va. Code § 8.4A-503 ..... 6, 7

**Rules**

Fed. R. Civ. P. 12(b)(7) .......... 4, 5
Fed. R. Civ. P. 19 .......... 4, 5
Fed. R. Civ. P. 8(a)(2) .......... 5, 6
Fed. Rule Civ. P. 12(b)(6) .......... 2, 5, 6

**Treatises**

Wright & Miller, Fed. Prac. & Proc. Civ. § 1359 (3d ed.) .......... 4

## PRELIMINARY STATEMENT

Plaintiff Gary Bowman, a local lawyer, alleges that he was the victim of an international fraud scheme that induced him to wire $108,485.04 (the "Funds") to the fraud's perpetrators. Plaintiff's bank wired the Funds to defendant Citibank, N.A. ("Citibank"), instructing Citibank to deposit the Funds into an account (the "Account") owned by the United Bank for Africa, Plc. ("UBA"). Citibank received the Funds from plaintiff's bank and deposited the Funds into the Account, exactly as instructed. Plaintiff alleges, on information and belief, that the Funds are still in the Account and asks the Court to enjoin Citibank from releasing the Funds to the Account's owner.

This Court should dismiss plaintiff's complaint for two reasons. First, plaintiff has not joined a necessary party—the owner of the Account, which is UBA.[1] This Court cannot grant the relief plaintiff requests without giving UBA notice and opportunity to be heard in the matter. Second, plaintiff fails to identify any cause of action that would warrant the injunctive relief he requests. Indeed, he does not identify any cause of action at all—instead making a naked claim for "Injunction." But an injunction is a remedy, not a cause of action. And, in any event, under the alleged facts, plaintiff cannot state a claim under any legal theory. As cannot be disputed from the face of the complaint, Citibank did what plaintiff asked it to do and what the law required it to do. The Court should grant Citibank's motion and dismiss this action with prejudice.

[1] As explained below, plaintiff alleges that the Account is owned by Holarem N Ltd. (Compl. ¶¶ 6, 9, 16), but this allegation is contradicted by evidence the Court may consider under applicable law in connection with this motion to dismiss.

## STATEMENT OF FACTS[2]

Plaintiff is an attorney in Roanoke, Virginia. (Compl. ¶ 1.) In August 2020, a person calling himself "Brian Zikaras" contacted plaintiff for assistance in a purported employment dispute with Walgreens, Inc. (Compl. ¶ 8.) To resolve this purported dispute, plaintiff negotiated with "Kathleen Thompson Wilson," who claimed to be a human resources manager at Walgreens. (*Id.*) Ms. Wilson agreed to "settle" the matter and send the purported settlement amount to plaintiff. (*Id.* ¶¶ 8, 10.) On or around September 2, 2020, plaintiff received a purported cashier's check for $109,687.04 from "BBVA USA bank." (*Id.* ¶ 10.)

On September 3, 2020, plaintiff instructed his bank, American National Bank & Trust, to wire $108,485.04 to Citibank. (Compl. ¶¶ 12, 14, 15; Exhibit 1[3].) The payment instructions directed Citibank to credit the Funds to account number 36320321[4] (i.e., the Account), which is owned by UBA.[5] (Compl. ¶ 12; Exhibit 1.) The payment instructions identify "UBA B PLC" in connection with

---

[2] As required on a motion to dismiss, the complaint's allegations are recited as if they are true, except where contradicted by documents essential to plaintiff's claims. Citibank does not concede the truth of plaintiff's allegations.

[3] Attached as Exhibit 1 is a copy of the transaction record, including payment instructions effecting the wire transfer referenced throughout the complaint. (*See* Compl. ¶¶ 12, 20, conclusion). In adjudicating a 12(b)(6) motion, the Court may consider documents outside the complaint "so long as they are integral to the complaint and authentic." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir.2009)). In the present case, the transaction record, including the wire instructions, is integral to plaintiff's claims against Citibank; they define Citibank's obligations vis-à-vis the Funds. Relevant here, they direct Citibank to deposit the funds into UBA's Account.

[4] Plaintiff's complaint appears to contain a typo, referencing account number "35320321" rather than "36320321." Plaintiff's wire transfer instructions reference the correct account number. (*See* Exhibit 1.)

[5] UBA has a correspondent bank relationship with Citibank, and its account number at Citibank, 36320321, is a publicly available on its internet site. *See* https://www.ubagroup.com/nigeria/wp-content/uploads/sites/3/2018/10/nigeria-swift-code.pdf (last accessed Oct. 4, 2020), attached hereto as Exhibit 2. *See also Philips*, 572 F.3d at 180 ("In reviewing a Rule 12(b)(6) dismissal, [courts] may properly take judicial notice of matters of public record."). Correspondent-bank relationships allow

the Account. (Exhibit 1.) The transaction record shows a reference field—titled "PAYMENT REFERENCE ADDTL INFO"—that identifies an entity named "HOLAREM N LTD" ("Holarem") and what may be an account number for that entity. (Exhibit 1.) Plaintiff alleges, on information and belief, that the Funds remain in UBA's Citibank account. (Compl. ¶ 15.)

The payment instructions reflect that, for UCC purposes, Citibank was an "intermediary bank" in this transaction. An "intermediary bank" is a bank that receives a funds transfer, but that is neither the originator's bank nor the beneficiary's bank. Va. Code § 8.4A-104. The "originator's bank" is the bank sending the first payment order. *Id.* Here, that is plaintiff's bank, American National Bank & Trust. (Exhibit 1). The "beneficiary's bank" is the bank of the ultimate beneficiary of the funds. *Id.* Here, that is UBA. (Exhibit 1.)

Several days after directing American National Bank & Trust to wire the Funds, plaintiff learned that the $109,687.04 cashier's check he received was fraudulent. (Compl. ¶ 13.) Shortly thereafter, plaintiff's bank, American National Bank & Trust, notified Citibank that the wire transfer was fraudulent. (Compl. ¶ 14.) In his complaint, plaintiff asks for a permanent injunction preventing Citibank from allowing Funds to be withdrawn from the Account by its owner, whom plaintiff misidentifies as Holarem.[6] (Compl. ¶¶ 17-25.) Other than this "Injunction" count, the complaint asserts no other legal claim against Citibank.

---

persons in the United States to transfer funds to persons in foreign countries. (*See* Va. Code § 8.4A-104, UCC Editors' Note 1, Case #3 (explaining use of correspondent banks to effect international funds transfers)).

[6] UBA owns the Account. But the complaint repeatedly identifies Holarem as the entity associated with the persons who defrauded him. (*See, e.g.*, Compl. ¶¶ 7, 9, 16, 21.)

# ARGUMENT

## I. Plaintiff Has Failed to Join a Necessary Party.

This Court should dismiss the complaint because plaintiff has failed to join as a party the owner of the Account, UBA. Under Rule 12(b)(7) of the Federal Rules of Civil Procedure ("FRCP"), a court may dismiss a complaint for failing to join a necessary party in accordance with Rule 19 of the FRCP.[7]

"The first question under Rule 19(a) is whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020) (quoting *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014)). A person is a necessary party where either: (1) the "court cannot accord complete relief among existing parties" or (2) disposing of the action in the person's absence would "impede the person's ability to protect the person's interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

The owner of a financial account is a necessary party to an action that seeks to dispose of funds in that account. *Hughes v. Bank of America*, Case No. 5:07cv109, 2008 WL 3926552, at *3 (W.D. Va. Aug. 26, 2008) (holding that title company was necessary party where the proceeds from a home sale were in a bank account owned by the title company); *see also Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014) (holding that Ghanaian bank was necessary party to action seeking recovery of funds held in Ghanaian bank account).

*Hughes* is directly on point. In that case, the plaintiff sued Bank of America to recover funds from the sale of her deceased mother's home. *Hughes*, 2008 WL 3926552, at *3. The funds were held

---

[7] In evaluating a motion to dismiss on this basis, "[t]he district judge is not limited to the pleadings" and may resolve disputed questions of fact related to the necessary-party inquiry. Wright & Miller, Fed. Prac. & Proc. Civ. § 1359 (3d ed.). Thus, the moving party may "present affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.*; *see also Guvnor*, 948 F.3d at 219 (approving district court's use of extrinsic evidence to resolve 12(b)(7) issue).

in a trust account owned by a title company, which refused to release the funds. *Id.* The plaintiff sued the bank to force the bank to release the funds to her but did not join the account's owner—*i.e.*, the title company—as a party to the action. This Court dismissed the complaint for failure to join a necessary party, noting that the account at issue belonged to the title company and that adjudicating the dispute in the title company's absence would potentially (1) impair the title company's interest in the account and (2) expose the bank to multiple obligations. *See id.*

Here, as in *Hughes*, plaintiff seeks an injunction that will affect a bank account owned by a non-party. UBA owns the Account. (Exhibit 1) (identifying UBA as the party whose Account was credited as directed by the wiring instructions). Litigating this matter in UBA's absence would potentially "impede [UBA's] ability to protect [its] interest" or would "leave [Citibank] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). Because the complaint fails to join a necessary party, it should be dismissed under Rule 12(b)(7).

## II. Plaintiff Fails to State a Claim for "Injunction."

When evaluating the sufficiency of a complaint for Rule 12(b)(6) purposes, courts look to the pleading requirements recited in Rule 8(a)(2) of the FRCP. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a)(2) requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must "give the defendant fair notice of what the claim is and the grounds on which it rests." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019). A complaint provides fair notice of the grounds for a claim where it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" permitting a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Twombly*,

550 U.S. at 570). A plaintiff cannot support a claim with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**A. An injunction is not a cause of action.**

The only "claim" identified in the complaint is for "Injunction." But there is no such thing as a free-standing claim for an injunction. "[I]njunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Bloch v. Executive Office of the President*, 164 F. Supp. 841, 862 (E.D. Va. 2016). In other words, an injunction must be grounded on underlying cause of action—there is no remedy without a right. Because the complaint does not assert any cause of action against Citibank, it fails to state a claim as required by Rule 8(a)(2) and must be dismissed under Rule 12(b)(6).

**B. Injunctions are barred as a matter of law against intermediary banks.**

Even if "Injunction" were a free-standing cause of action—and, again, it is not—plaintiff has no viable injunction claim against Citibank because the Uniform Commercial Code (the "UCC") prohibits injunctions against intermediary banks. Va. Code § 8.4A-503.[8] UCC Article 4A-503 governs the kinds of injunctions that may be issued against banks processing wire transfers. The rules vary depending on the role of the bank in the transaction—i.e., whether it is an originating, intermediary, or beneficiary bank. *Id.*

Plaintiff's own allegations and the payment instructions demonstrate that the bank initiating the funds transfer was plaintiff's bank, American National Bank & Trust, and that Citibank's role was merely to act as intermediary—i.e., transferring funds from the originator's bank, American National

[8] The wire to Citibank was sent from Virginia to New York, creating a potential choice-of-law issue. This is a "false conflict," however, as both Virginia and New York have adopted Article 4A of the UCC. This brief will refer to Virginia's codification of Article 4A.

Bank & Trust, to the beneficiary's bank, UBA. Citibank did *not* transfer funds to the ultimate beneficiary, which plaintiff alleges is Holarem (*see, e.g.*, Compl. ¶9, 12, 14; Exhibit 1). The UCC allows injunctive relief only against originator banks and beneficiary banks. Va. Code § 8.4A-503. Injunctions directed to intermediary banks are *not* authorized:

> After the funds transfer is completed by acceptance of a payment order by the beneficiary's bank, that bank can be enjoined from releasing funds to the beneficiary or the beneficiary can be enjoined from withdrawing the fund. *No other injunction is permitted. In particular, intermediary banks are protected.*

Va. Code § 8.4A-503, UCC comment (emphasis added). Thus, even if an injunction *were* a cause of action—and, as noted above, it is not—a claim seeking an injunction would fail in the present case because the UCC disallows injunctive relief against intermediary banks.

### C. The complaint does not allege facts supporting any cognizable claim against Citibank.

Although the complaint, on its face, asserts only a claim for "Injunction," it makes passing reference to the USA PATRIOT Act ("Patriot Act"), "conspiracy," and "negligence." (Compl. ¶¶ 6, 7, 19.) None of these references states a claim as a matter of law.

*The Patriot Act References*

In two conclusory sentences, plaintiff cites the Patriot Act and then alleges that Citibank violated it by opening the Account in the name of Holarem N Ltd without obtaining the "identity of a natural person associated with 'Holarem N Ltd.'" (Compl. ¶¶ 5-6). Plaintiff further alleges that "Citibank, N.A. facilitates Holarem N. Ltd.'s fraudulent schemes by allowing it to maintain an account without proof of identity as required by the PATRIOT Act and by failing to monitor and prevent its fraudulent activity when given clear warnings and notifications that the account is being used for fraudulent and criminal activity." (Compl. ¶ 7). Not only is this allegation based on the false premise that Holarem owns the Account—a premise belied by the wiring instructions shown in Exhibit 1—it

fails to state a claim under the Patriot Act because "courts are unanimous in holding that there is no private right of action under the . . . Patriot Act." *Taylor & Co. v. Bank of Am. Corp.*, No. 3:14-CV-92-MOC-DSC, 2014 WL 3557672, at *3 (W.D.N.C. June 5, 2014) (collecting cases).

*The Conspiracy References*

The complaint also makes the conclusory allegation that "Citibank, N.A. and Holarem N. Ltd. have conspired to use the account in the name of Halarem [sic] N. Ltd. at Citibank, N.A. to facilitate financial bank, mail, and wire fraud, including cashier check fraud." (Compl. ¶ 7.) "A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 891 (W.D. Va. 2020) (quoting *Glass v. Glass*, 321 S.E.2d 69, 74 (Va. 1984)). To state a claim for conspiracy, a plaintiff must "allege facts supporting a preconceived plan" between the alleged co-conspirators. *Id.* Plaintiff's conclusory allegations fail to state a claim for conspiracy. Plaintiff has not alleged—and, consistent with Rule 11 of the FRCP, cannot allege—any facts showing a "preconceived plan" between Citibank and Holarem to defraud him.[9]

*The Negligence References*

Plaintiff's conclusory allegations that Citibank owes a duty to plaintiff to protect him from fraudulent activity and was negligent in failing to act based on warning and notification from American National Bank & Trust fail to state a claim for negligence. (Compl. ¶¶ 18-19.) As a threshold matter, applicable law prohibits negligence claims related to wire transfers. The rights and duties of parties to funds transfers are instead delineated by UCC Article 4A, which "are intended to be

[9] Again, plaintiff's allegations rest on the factual premise that Holarem holds an account at Citibank. *See supra*, page 7.

the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." Va. Code § 8.4A-101, official comment. Thus, "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." *Id.*

Under the UCC, a bank that receives a payment order from another bank is obligated to carry out its obligations as dictated by the sending bank's instructions on that same day, unless otherwise specified. Va. Code § 8.4A-302(a)(1). In the present case, Citibank received the Funds from American National Bank & Trust on September 3, 2020. (Compl. ¶ 12.) Thus, under Virginia Code § 8.4A-302(a)(1), Citibank had a legal obligation to deposit the Funds into the Account on that date. Citibank did not act negligently; it acted in strict accordance with the law. To the extent negligence law differs from this, it is preempted by the UCC.

Plaintiff's negligence claim also fails because banks owe no duty of care to noncustomers. *See Terry v. Bank of Am., N.A.*, 350 F. Supp. 2d 727, 729 (W.D. Va. 2004) ("[A] bank ordinarily owes no duty of care to a noncustomer."). *See also Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01 CIV. 10726 (LAP), 2003 WL 470611, at *4 (S.D.N.Y. Feb. 25, 2003) (same). And even if Citibank *did* owe plaintiff a duty of care—and it does not—any negligence claim still would be barred by the economic loss rule, as plaintiff has suffered only monetary losses and is not in privity with Citibank. *Id.* (citing *Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 316 (4th Cir.1998); *Copenhaver v. Rogers*, 384 S.E.2d 593, 595 (Va. 1989)).

## III. The Complaint Should Be Dismissed with Prejudice and Without Leave to Amend.

Courts deny leave to amend where amendment would be futile because any new claims would be dismissed. *See, e.g., McKeown v. Rahim*, 446 F. Supp. 3d 69, 87 (W.D. Va. 2020). Here, amendment would be futile because Citibank has done nothing other than execute the wiring

instructions it was given.[10] Plaintiff cannot complain that his own instructions were carried out.[11] While plaintiff's situation is unfortunate, he has not alleged, and cannot in good faith allege, any facts supporting a claim that Citibank somehow is responsible for his having been defrauded.

---

[10] In its Commentary No. 16, the Permanent Editorial Board for the Uniform Commercial Code explains why intermediary banks (like Citibank) cannot, as a matter of law, be held liable to persons (like plaintiff) who originate wire transfers:

> In summation, under the Article 4A structure, the issuance and acceptance of payment orders create rights and obligations only as between the sender of the payment order and its receiving bank (e.g., between originator and originator's bank as to the originator's payment order), between the originator's bank and an intermediary bank as to the originator's bank's payment order, between the intermediary bank and the beneficiary bank as to the intermediary bank's payment order, and finally as between the beneficiary bank that has accepted a payment order and the beneficiary. Accepted and executed payment orders thus create contractual obligations that result in a series of credits and debits to bank accounts. They do not involve a transfer of property of the originator to the beneficiary. A receiving bank owes its contractual obligation to its sender to execute the payment order and the sender owes its contractual obligation to pay the amount of the payment order to its receiving bank. The intermediary bank has no contractual obligation to the originator or to the beneficiary, and neither the originator nor the beneficiary has any contractual obligation to or rights flowing from the intermediary bank. Thus, credits in an intermediary bank are credits in favor of the originator's bank, and are not property of either the originator or the beneficiary.

https://www.ali.org/media/filer_public/9c/8f/9c8f3cc2-c8d0-4dea-b4bc-f74ca2a1b2e4/commentary-4a-502d_and_4a-503-final.pdf (last accessed Oct. 6, 2020).

[11] Indeed, it would have been unlawful for Citibank to have *refused* to follow the instructions it received. Once Citibank received the payment order from American National Bank & Trust, it had a legal obligation to credit UBA's account by $108,485.04, *see* Va. Code § 8.4A-302(a)(1), and indeed to do so on the same day it received the Funds, *see* Va. Code § 8.4A-301(b).

## CONCLUSION

For the foregoing reasons, Citibank respectfully requests that this Court grant Citibank's motion and dismiss this action with prejudice.

CITIBANK, N.A.

/s/ Joseph M. Rainsbury

Joseph M. Rainsbury (VSB No. 45782)
MILES & STOCKBRIDGE P.C.
919 E. Main Street, Suite 1100
Richmond, VA 23219
804.905.6910 (Telephone)
804.905.6910 (Facsimile)
jrainsbury@milesstockbridge.com
*Counsel for Citibank, N.A.*