IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Roanoke Division

| | | |
|---|---|---|
| GARY M. BOWMAN, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | 7:20-cv-00586 |
| | ) | |
| v. | ) | |
| | ) | |
| CITIBANK, N.A., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED BANK FOR AFRICA PLC, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

COMES NOW the plaintiff Gary M. Bowman, by counsel, who moves this Court to enter judgment in his favor against the Defendants on the grounds stated herein.

### Parties

1. Gary M. Bowman ("Bowman") is a resident of Roanoke, Virginia. He is a licensed attorney in Virginia.

2. Citibank, N.A. is a national bank that does business in Virginia, including this judicial district. Its main office is in South Dakota.

3. United Bank for Africa PLC (hereinafter "United Bank for Africa") is a public limited company operating as a bank in the United States.

4. United Bank for Africa does business in the Commonwealth of Virginia, including in this judicial district, by offering internet banking services (including checking accounts, savings accounts, wire transfer services, and other banking products) to

1

residents in the Commonwealth of Virginia.

5.   United Bank for Africa, according to its website, "is present" in the United States (https://www.ubagroup.com/about-uba/):

> UBA USA commenced operations in New York in 1982 as a Representative Office.  The bank subsequently obtained a banking license in 1984 to operate a Federal Branch. . . .   The UBA Group has over 20,000 employees working in 23 countries, namely 20 African countries, the UK, US and France.

6.   United Bank for Africa maintains a physical presence in the United States at, among other places, 1 Rockefeller Plaza (8th Floor), New York, New York.

7.   United Bank for Africa is not commonly known or referred to as "UBA B. PLC."

**Venue**

8.   The fraud by IMPOSTERS 1 and 2 occurred in this judicial district.

9.   Bowman's payment order and the funds transfer that is the subject of this action were made in this judicial district.

10.   Upon information and belief, Citibank processed the payment orders it received and sent at its main office in South Dakota.

11.   Plaintiff seeks to recover to this judicial district the funds that are the subject of this action.

**Statement of Facts**

**Bowman was defrauded by IMPOSTERS 1 and 2**

12.   Bowman was defrauded.  On or about August 19, 2020, IMPOSTER 1 (posing as Brian Zikaras, a pharmacist) contacted Bowman to

2

retain Bowman to represent him as his attorney in resolving a putative dispute (it is now clear it was a feigned dispute) with his former employer, Walgreens, Inc.  IMPOSTER 2 posed as Walgreens, Inc. Human Resources Director Kathleen Thompson Wilson.  In the period from August 19, 2020 through September 1, 2020, IMPOSTERS 1 and 2 feigned a dispute in which Plaintiff Bowman (not knowing the dispute was feigned) acted as Attorney for IMPOSTER 1 (not knowing that IMPOSTER 1 was an imposter of the real Brian Zikaras).  Bowman negotiated a settlement from IMPOSTER 2 in favor of his client IMPOSTER 1.  IMPOSTERS 1 and 2 worked together and each, separately, made false statements to Bowman as to their identities and the existence of an employment dispute between Brian Zikaras and Walgreens, Inc.

13.  On or about September 1, 2020, IMPOSTERS 1 and 2 caused the issuance of a putative "Cashier's Check," drawn on BBVA USA bank, in the amount of $109,687.04, payable to Bowman, for payment of a putative settlement in favor Brian Zikaras, the person whom IMPOSTER 1 impersonated.

14.  Bowman deposited the Cashier's Check into his attorney trust account at American National Bank & Trust Company ("American National").

15.  Bowman was instructed by IMPOSTER 1 to transfer the funds to "UBA B. PLC" (IMPOSTER 1 said that UBA B. PLC was the seller of equipment that his company (HOLAREM N LTD) was purchasing from UBA B. PLC and that UBA B. PLC had a Citibank account).  IMPOSTER 1 provided Bowman written wire transfer instructions, which

3

Bowman provided to American National.

### Bowman made a payment order to pay "UBA B. PLC"

16.  On September 3, 2020, Bowman instructed American National to wire transfer $108,485.04 (hereinafter "the funds") to Citibank (as "Beneficiary Bank" defined in Va.Code § 8.4A-103(a)(3), also in U[niform] C[ommercial] C[ode] § 4A-103(a)(3)).  Bowman instructed Citibank to credit the transferred funds to "UBA B. PLC" (the "Beneficiary" defined in Va.Code § 8.4A-103(a)(2), also in UCC § 4A-103(a)(2)).  Bowman identified "UBA B. PLC"'s account number at Citibank as 36320321.

17.  Bowman acted in reliance upon the fraudulent statements made to him by IMPOSTERS 1 and 2.

18.  Bowman instructed American National to include in the instructions the following memorandum line:

 *PAYMENT**REFERENCE/ADDITIONAL INFO:3002857199**HOLAREM N LTD.

19.  Bowman did not instruct Citibank to deposit the funds into a Citibank account owned by United Bank for Africa.

20.  Bowman did not instruct Citibank to make a payment order or to otherwise transfer the funds to United Bank for Africa.

21.  American National paid the funds to Citibank through the Fedwire Funds Service.

22.  Unknown to Bowman at the time he originated the funds transfer, UBA B. PLC is a non-existent and unidentifiable entity and did not have an account at Citibank.

23.  Citibank did not accept the funds transfer as *beneficiary bank*.

4

### Citibank transferred the funds to United Bank for Africa

24.  Instead, Citibank accepted Bowman's payment order as *intermediary bank* by originating its own payment order (separate from, and inconsistent with, Bowman's payment order) and transferred the funds to United Bank for Africa pursuant to its separate payment order.  Citibank has made a judicial admission of this fact in this case (ECF No. 10 at 3, 6).

25.  United Bank for Africa received the funds transfer from Citibank.

26.  The payment order received by United Bank for Africa referred to a nonexistent or unidentifiable *person*.

27.  The payment order received by United Bank for Africa referred to a nonexistent or unidentifiable *account*.

### Bowman cancelled the payment order

28.  Bowman discovered the fraud on September 8, 2020, when he was notified by American National that the issuer of the Cashier's Check (BBVA USA bank) had refused payment of the Cashier's Check because it was fictitious.  On September 8, 2020, Bowman cancelled the payment order pursuant to Va.Code § 8.4A-211(a) and UCC § 4A-211(a), American National communicated the cancellation to Citibank, and Citibank communicated the cancellation to United Bank for Africa.  Bowman's September 8, 2020 cancellation was on Citibank's second funds-transfer banking day after the payment order was originated (because of intervening weekend and bank holidays).

29.  On September 9, 2020, the Circuit Court for the City of

Roanoke issued a Temporary Restraining Order ("TRO") prohibiting Citibank from paying the funds. The TRO contained typographical errors regarding the Routing Number and Account Number, but Citibank, in fact, identified the funds transfer to which the TRO referred. Citibank communicated the cancellation of the funds transfer to United Bank for Africa with adequate information for United Bank for Africa to identify the funds transfer to which Citibank referred.

30. Citibank made several attempts to recall the funds that it transferred to United Bank for Africa, but United Bank for Africa did not respond in any way to Citibank's communications.

31. Upon information and belief, United Bank for Africa is in possession of the funds.

32. Bowman has made a demand for compensation to United Bank for Africa under UCC § 4A-305(b). United Bank for Africa refused Bowman's demand for compensation by failing to respond to it.

33. Bowman retains title to the funds. Citibank (in fact, even though it was contrary to and inconsistent with Bowman's payment order) acted only as intermediary bank. Title to the funds did not pass from Bowman while the funds were in the funds transfer process through Citibank. And United Bank for Africa was unable to accept the funds transfer because the payment order referred to a nonexistent and unidentifiable account and person.

6

### Claims for Relief

### Count I
### (Against United Bank for Africa PLC)
### (UCC §§ 4A-207(a) and 4A-305(b)(ii))

34.  The allegations of paragraphs 1-33 are adopted herein.

35.  Upon information and belief, United Bank for Africa is not a participant in the Fedwire Funds Service.

36.  The funds transfer made by Citibank to United Bank for Africa was governed by Article 4A of the Uniform Commercial Code ("UCC"), which has been adopted by both Virginia and New York.

37.  The funds transfer was originated in Virginia.

38.  United Bank for Africa was prohibited by UCC § 4A-207(a) from accepting the payment order of the funds received by it from Citibank because the payment order referred to a nonexistent or unidentifiable person or account.

39.  No person has rights to the funds as a beneficiary of the payment order of the funds received by United Bank for Africa from Citibank and acceptance of the order cannot occur.

40.  Bowman, as a sender in the funds transfer, is entitled to get the funds back from United Bank for Africa.

41.  United Bank for Africa is liable to Bowman under UCC § 4A-305(b)(ii) in the amount of $108,485.04, and for incidental expenses and interest losses, because his payment order was not executed by United Bank for Africa in accordance with the terms of his payment order.

42.  United Bank for Africa is liable to Bowman under UCC § 4A-

7

305(e) for his reasonable attorney's fees because Bowman made demand to United Bank for Africa for compensation under UCC § 4A-305(b)(ii) prior to joining United Bank for Africa in this action, but United Bank for Africa refused Bowman's demand for compensation by failing to respond to it.

## Count II
### (Against United Bank for Africa PLC)
### (Injunction pursuant to UCC § 4A-503(iii))

43. The allegations of paragraphs 1-42 are adopted herein.

44. UCC § 4A-503(iii) authorizes this Court to enjoin United Bank for Africa from releasing the funds to a person whom it purports to be the beneficiary of the funds transfer.

45. There is proper cause to enjoin United Bank for Africa from releasing the funds (in the amount of $108,485.04) pending further Order of this Court because no person has rights to the funds as a beneficiary of the payment order received by United Bank for Africa from Citibank and acceptance of the order cannot occur. Bowman, as sender of the funds transfer, is entitled to get the funds back from United Bank for Africa. An injunction would be in compliance with applicable law (UCC 4A-207(a), Va.Code § 4A-207(a), UCC § 4A-503(iii), and Va.Code § 4A-503(iii)).

## Count III
### (Against United Bank for Africa PLC)
### (UCC § 4A-211)

46. The allegations of paragraphs 1-45 are adopted herein.

47. UCC § 4A-211(a) prohibited United Bank for Africa PLC from accepting the payment order because Bowman cancelled the payment

8

order, and Citibank gave notice of Bowman's cancellation, before United Bank for Africa accepted the payment order.

48. Bowman, as sender of the funds transfer, is entitled to get the funds back from United Bank for Africa.

49. United Bank for Africa is liable to Bowman under UCC § 4A-211(e) in the amount of $108,485.04 because no person other than Bowman is entitled to the funds.

### Count IV
### (Against United Bank for Africa)
### (Constructive Trust)

50. The allegations of paragraphs 1-49 are adopted herein.

51. The funds were transferred as a result of fraud perpetrated by IMPOSTERS 1 and 2 (acting under the name of HOLAREM N LTD), as described above. The fraud involved false statements made by IMPOSTERS 1 and 2 to Bowman, a putative Attorney-Client confidential relationship between Bowman and IMPOSTER 1, Bowman's transfer of property in reliance upon the false statements, and unjust enrichment of IMPOSTERS 1 and 2.

52. A failure of justice will occur if the funds are transferred to IMPOSTERS 1 and 2, who perpetrated the fraud.

53. Upon information and belief, IMPOSTERS 1 and 2 seek to obtain the funds from United Bank of Africa.

54. Equity requires that this Court impose a constructive trust upon the funds (in the amount of $108,485.04) to prevent the unjust enrichment of IMPOSTERS 1 and 2.

Count V
(Against Citibank)
(Private right of action under Subpart B, Regulation J,
12 C.F.R. § 210.25(b)(1))

55.  The allegations of paragraphs 1-33 are adopted herein.

56.  The funds transfer received by Citibank was received through the Fedwire Funds Service.

57.  The funds transfer received by Citibank was governed by Subpart B of Regulation J (issued by the Board of Governors of the Federal Reserve System), 12 C.F.R. § 210.25 - 210.32 (including Appendices A and B), which adopted the provisions of UCC Article 4A.

58.  Citibank did not execute Bowman's payment order in accordance with its terms.

    (a)  Bowman's payment order was of the type described as Case No. 2 in the Official Comment on UCC § 4A-104.  Bowman instructed American National to pay the funds to UBA B. PLC's account at Citibank.

    (b)  Citibank did not follow Bowman's instructions, but executed the funds transfer as if Bowman had issued a payment order of the type described as Case No. 3 in the Official Comment on UCC § 4A-104.  Citibank has made a judicial admission of this fact in this case (ECF No. 10 at 3, 6).

        (1)  Citibank did not execute Bowman's instructions because Citibank was the beneficiary bank under Bowman's instructions, but Citibank acted as an intermediary bank and passed the funds through to United Bank for Africa.

        (2)  Citibank was not an intermediary bank under

10

Bowman's wiring instructions.  His wiring instructions directed the wiring of funds *to* the Citibank account owned by "UBA B. PLC," not the payment *through* Citibank to United Bank for Africa PLC.  Bowman's instructions did not contain any words or numbers instructing payment "through" Citibank as the intermediary bank. Bowman's wiring instructions did not identify United Bank for Africa PLC as the beneficiary bank or identify the bank routing number or SWIFT code assigned to United Bank for Africa PLC. Bowman's wiring instructions did not contain the words "for further credit," or identify a "Beneficiary account number," "Beneficiary name," "Beneficiary address," or United Bank for Africa branch, which was all information required by United Bank for Africa for U.S. dollar transfers "from abroad through United Bank for Africa PLC" to a beneficiary with an account at United Bank for Africa (See ECF No. 102 at 2).

59.  If Citibank had not immediately, on its own (and inconsistent with Bowman's payment order) originated its own payment order and transferred the funds to United Bank for Africa PLC, the funds could have been frozen by Citibank when it received Bowman's cancellation of the payment order and the TRO prohibiting it from further payment of the funds.

60.  Upon information and belief, the only payment order Citibank received instructing its disposition of the funds was Bowman's payment order.  Citibank did not receive instructions from United Bank for Africa to originate a payment order directing Citibank to transfer the funds to it.  The basis of Plaintiff's belief is

11

that United Bank for Africa was not aware of the funds transfer
from Bowman.

61.  Citibank is liable to Bowman under UCC § 4A-305(b)(ii) in
the amount of $108,485.04, and for incidental expenses and
interest losses, because his payment order was not executed by
Citibank in accordance with the terms of his payment order.

### Count VI
### (Against Citibank)
### (Negligence)

62.  The allegations of paragraphs 1-33 and 55-61 are adopted
herein.

63.  The TRO created a "special relationship" between Citibank
and Bowman and imposed a legal duty upon Citibank in favor of
Bowman.  The TRO prohibited Citibank from paying the funds.

64.  Citibank negligently violated the duty it owed to Bowman
when it (on its own, in violation of the cancellation order and
the TRO, and contrary to Bowman's wiring instructions) originated
its own payment order (separate from, and inconsistent with,
Bowman's payment order) and transferred the funds to United Bank
for Africa for credit to a nonexistent and unidentifiable account
at United Bank of Africa.

65.  Bowman and Citibank were in privity of contract because
Bowman's payment order was an offer in contract to accept the
offer of the funds transfer, Citibank had the option of rejecting
the offer, but Citibank accepted the offer, forming a contract
for Citibank to execute Bowman's instructions.

66.  But Citibank negligently breached the duty it owed to Bowman

12

(that was created by the TRO and not by the contract) to not pay out the funds after it received the TRO.

67.  Bowman was injured by Citibank's negligence because the funds would have been accessible to Citibank and subject to a freeze by Citibank in accordance with the TRO when it received Bowman's cancellation order and the TRO, but the funds were not accessible to a freeze because Citibank negligently originated its own payment order (separate from, and inconsistent with, Bowman's payment order) and transferred the funds to United Bank for Africa for credit to a nonexistent and unidentifiable and nonexistent customer account at United Bank of Africa.

68.  Accordingly, Citibank is liable to Bowman in the amount of $108,485.04 plus his reasonable fees and costs.

### Conclusion

69.  FOR THE REASONS stated herein, Bowman prays that this Court will award him:

(a)  On Count I, judgment against United Bank for Africa in the amount of $108,485.04 plus Plaintiff's reasonable costs and attorney fees;

(b)  On Count II, an injunction against United Bank for Africa prohibiting it from releasing funds (in the amount of $108,485.04) pending further Order of this Court;

(c)  On Count III, judgment against United Bank for Africa in the amount of $108,485.04;

(d) On Count IV, an Order imposing a constructive trust on the funds (in the amount of $108,485.04);

(e)   On Count V, judgment against Citibank in the amount of $108,485.04 plus Plaintiff's incidental expenses and interest losses;

(f)   On Count VI, judgment against Citibank in the amount of $108,485.04 plus Plaintiff's reasonable fees and costs; and

(g)   any other legal and equitable relief to which Plaintiff is entitled.

**Jury Demand**

70.   Plaintiff demands trial by jury.

Respectfully Submitted,

GARY M. BOWMAN

By: /s/ Gary M. Bowman

Gary M. Bowman, Esq.
VSB No. 28866
2728 Colonial Ave., Ste. 100
Roanoke, Virginia  24015
Tel: (540) 343-1173
gary@garymbowman.com
    *Pro Se*

**CERTIFICATE OF SERVICE**

I, Gary M. Bowman, do hereby certify that a true and correct copy of this Amended Complaint was filed in the Court's ECF system on October 27, 2020, which provided NEF to counsel of record.

/s/ Gary M. Bowman