UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY M. BOWMAN,<br><br>Plaintiff;<br><br>v.<br><br>CITIBANK, N.A., *et al.*,<br><br>Defendants. | Case No. 7:20-cv-586 |

**DEFENDANT UNITED BANK FOR AFRICA PLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant United Bank for Africa PLC ("UBA") submits this memorandum of law in support of its motion to dismiss Plaintiff Gary M. Bowman's Amended Complaint (ECF No. 18) under Federal Rule of Civil Procedure 12(b)(2) and (6).

## I. INTRODUCTION

Bowman, a Virginia attorney, claims that two impostors fraudulently induced him to wire $108,485.04 to UBA's account with Citibank in New York. He now sues Citibank and UBA, seeking the return of those funds, which UBA deposited into a customer's account in Nigeria pursuant to the provided wiring instructions. In his Amended Complaint, Bowman asserts claims against UBA for violation of UCC § 4A-207(a) (Count I), injunction under UCC § 4A-503(iii) (Count II), violation of UCC § 4A-211(a) (Count III), and constructive trust (Count IV). UBA moves to dismiss the

Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim.

This Court lacks personal jurisdiction over UBA because it is not at home in Virginia, and because Bowman's claims do not arise out of or relate to UBA's contacts with Virginia. UBA is incorporated and headquartered in Nigeria, and it has no direct contacts with Virginia. Nor did it reach into Virginia and initiate business with Bowman. Instead, Bowman, through his Virginia bank, reached into New York and initiated business with UBA. So the Amended Complaint must be dismissed as against UBA for lack of personal jurisdiction.

But even if this Court determines that it may exercise personal jurisdiction over UBA, the Amended Complaint must still be dismissed as against UBA because it fails to state a claim against UBA. Count I fails because UBA followed the provided wiring instructions and deposited the funds into its customer's account in Nigeria. Count II fails because there is no cause of action for an injunction. Count III fails because UBA accepted the payment order before receiving any communication from Bowman cancelling that order. And Count IV fails because there is no cause of action for a constructive trust.

The Amended Complaint must therefore be dismissed as against UBA for lack of personal jurisdiction or, alternatively, failure to state a claim.

## II. STATEMENT OF FACTS

Since this case is before the Court on UBA's motion to dismiss under Rule 12(b)(2) and (6), these facts are taken from (1) Bowman's allegations in the Amended

Complaint, unless those allegations are contradicted by documents integral to the Amended Complaint, *see Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); and (2) the declaration of UBA Assistant Manager Ikenna Enebe attached as **Exhibit A**, which the Court may consider on the jurisdictional issue, *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).[1]

On August 19, 2020, an impostor posing as a pharmacist named "Brian Zikaras" hired Bowman to represent him in a purported dispute with his former employer, Walgreens, Inc. (Am. Compl. ¶ 12.) Over the next several days, Bowman negotiated a settlement on Zikaras's behalf with another impostor posing as a Walgreens human resources director named "Kathleen Thompson Wilson." (*Id.*) On September 1, Wilson issued a cashier's check, "drawn on BBVA USA bank, in the amount of $109,687.04, payable to Bowman," for payment of the settlement in Zikaras's favor. (*Id.* ¶ 13.) Upon receiving the cashier's check, Bowman deposited it into his attorney trust account with American National Bank & Trust Company in Virginia. (*Id.* ¶ 14.)

Zikaras told Bowman that his company, Holarem N. Ltd., was buying equipment from a company named "UBA B. PLC," and thus told Bowman to wire the settlement proceeds to UBA's account (ending in 0321) with Citibank. (*Id.* ¶ 15.) So on September 3, in accordance with Zikaras's "written wire transfer instructions," Bowman told American National to wire $108,485.04 ("Transferred Funds") to UBA's

[1] Unless otherwise indicated, UBA does not admit the truth of any allegations in the Amended Complaint.

Citibank account. (*Id.* ¶ 16.) Bowman also told "American National to include in the instructions the following memorandum line: *Payment**Reference/Additional Info: 3002857199**Holarem N Ltd." (*Id.* ¶ 18.)

As Bowman instructed, American National wired the Transferred Funds to Citibank, which in turn deposited them into UBA's account on September 3. (*Id.* ¶ 16; Citibank Transaction Record, ECF No. 24-1, at 1.) The next day, UBA deposited the Transferred Funds into Holarem's U.S. dollar account (ending in 7199) with UBA in Nigeria, in accordance with the provided wiring instructions. (Enebe Decl. ¶ 10 & Ex. 4, UBA Holarem Account Statement.) Holarem withdrew most of the Transferred Funds three days later, on September 7. (*Id.*)

On September 8, Bowman learned that the cashier's check from BBVA was fraudulent. (Am. Compl. ¶ 28.) Later that same day, American National notified Citibank of the fraud, and Citibank notified UBA. (*Id.*) Then, on September 9, Bowman sued Citibank in the Circuit Court of Roanoke City, Virginia, and obtained an ex parte temporary restraining order instructing Citibank not to release the Transferred Funds. (*Id.* ¶ 29; ECF No. 1-1, at 5–20.)

Upon being served, Citibank removed the case to this Court and moved to dismiss for failure to state a claim. In response to Citibank's motion, Bowman filed the Amended Complaint, adding new allegations and claims and joining UBA as a defendant. The Amended Complaint asserts four claims against UBA and two against Citibank, seeking the return of the Transferred Funds. (Am. Compl. ¶¶ 34–69.) Citibank has again moved to dismiss for failure to state a claim. (ECF No. 23.)

UBA also moves to dismiss, both for lack of personal jurisdiction and, alternatively, for failure to state a claim.

UBA is a public limited company incorporated and headquartered in Nigeria. (Enebe Decl. ¶ 4.) Though UBA is mainly an African bank, it does have a wholly owned subsidiary bank, UBA New York, Inc. ("New York Branch"), located in New York, New York. (*Id.* ¶ 5.) The New York Branch provides banking services between Africa and the United States. (*Id.*)

UBA owns and maintains a correspondent account (ending in 0321) with Citibank in New York. (*Id.* ¶ 6.) It uses that account to receive deposits from, make payments or other disbursements on behalf of, or handle other financial transactions in U.S. dollars for its customers. (*Id.*) UBA's New York Branch does not have any control over the account. (*Id.* ¶ 7.)

Both UBA and its New York Branch maintain websites. (*Id.* ¶ 8.) UBA's website, ubagroup.com, provides information about UBA's operations in and outside Africa and allows existing customers to access online banking services. (*Id.*) It does not, however, permit U.S. residents to open new accounts. (*Id.*) The New York Branch's website, ubaamerica.com, provides information about the branch's operations in the United States and allows existing customers to access online banking services. (*Id.*) But like UBA's website, the New York Branch's website does not permit U.S. residents to open new accounts. (*Id.*) In addition, the website does not contain any information directed specifically at Virginia residents. (*Id.*) In fact, the website makes clear that the New York Branch is located in New York, providing

the branch's New York mailing address, phone number, and email address under the heading "Contact." (*Id.* & Ex. 3.)

UBA does not have any direct contacts with Virginia. (Enebe Decl. ¶ 9.) For example, it does not have any shareholders in Virginia; own, lease, or control any assets, real or personal, in Virginia; maintain any offices, branches, or automated teller machines in Virginia; or retain or recruit any employees or agents in Virginia. (*Id.*) Nor does UBA contract in Virginia; advertise or solicit business in Virginia; maintain a mailing address or phone or fax number in Virginia; or pay taxes in Virginia. (*Id.*) Further, UBA is not registered to do business in Virginia and does not maintain a registered agent in Virginia. (*Id.*)[2]

## III. LAW AND ARGUMENT

### A. The Amended Complaint must be dismissed as against UBA under Rule 12(b)(2), because this Court lacks personal jurisdiction over UBA.

To adjudicate a case, a district court must have not only subject-matter jurisdiction over a plaintiff's claims but also personal jurisdiction over the defendant. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). "Under Federal Rule of Civil Procedure 4(k)(1)(A), a district court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When, as here, the defendant is a nonresident of the forum state, a district court may assert personal jurisdiction

[2] Since UBA does not have a registered agent in Virginia, Bowman sought to effect service through the Secretary of the Commonwealth as UBA's statutory agent, swearing that UBA "is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies." (ECF No. 28.) As discussed below, however, UBA disputes that § 8.01-328.1(A), Virginia's long-arm statute, applies here.

only if "(1) the forum state's long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Brian Wishneff & Assocs. LLC v. Delshah Dev., Inc.*, No. 7:19-cv-190, 2019 WL 5865939, at *3 (W.D. Va. Nov. 11, 2019).

Virginia's long-arm statute, Va. Code § 8.01-328.1,[3] "extends personal jurisdiction to the extent permitted by the Due Process Clause." *James v. Subaru of Am., Inc.*, 433 F. Supp. 3d 933, 939 (W.D. Va. 2020). As a result, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

The Due Process Clause requires that a nonresident "defendant . . . have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). This requirement protects a nonresident defendant from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). It also "gives a degree of predictability to the

[3] This statute provides several grounds for asserting personal jurisdiction over a nonresident defendant. In the Amended Complaint, Bowman does not say which ground he claims gives this Court personal jurisdiction over UBA. (*See* Am. Compl. ¶¶ 3–6.) But it seems that he is basing personal jurisdiction on this ground: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in the Commonwealth." Va. Code § 8.01-328.1(A)(1). As explained below, however, Bowman's claims against UBA do not arise from or relate to any business it transacted in Virginia. Accordingly, § 8.01-328.1(A)(1) does not, and cannot, provide a basis for this Court to exercise personal jurisdiction over UBA.

legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where conduct will and will not render them liable to suit." *Brian Wishneff*, 2019 WL 5865939, at *3 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Depending on the nature and degree of a nonresident defendant's contacts with the forum state, a district court may exercise one of two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). If a district court possesses neither type over a defendant, then it must dismiss the plaintiff's claims against that defendant under Rule 12(b)(2).

In the Amended Complaint, Bowman does not make clear whether he is claiming that this Court has general or specific jurisdiction (or both) over UBA. (*See* Am. Compl. ¶¶ 3–6.) Regardless, this Court may not assert either type over UBA. As a result, the Amended Complaint must be dismissed as against UBA under Rule 12(b)(2).

1. ***To survive UBA's 12(b)(2) motion to dismiss, Bowman must make a prima facie showing that this Court has general or specific jurisdiction over UBA.***

Under Rule 12(b)(2), "a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). When, as here, "a district court considers a question of

personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather*, 773 F.3d at 558. "In ruling on a motion to dismiss for lack of personal jurisdiction," a district court must take the allegations of the complaint as true unless they are "controverted by the defendant's affidavit." *Anwar v. Ayoubi*, No. 1:15-cv-507, 2015 WL 13036679, at *2 (E.D. Va. Sept. 11, 2015) (quoting *Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984)).

A plaintiff cannot, however, "'rely on bare pleadings alone' after a defendant properly challenges personal jurisdiction." *Vape Guys, Inc. v. Vape Guys Distribution, Inc.*, No. 3:19-cv-298, 2020 WL 1016443, at *6 (E.D. Va. Mar. 2, 2020) (quoting *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D. N.J. 2002)). Rather, "the plaintiff must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence." *Id.* (quoting *Machulsky*, 210 F. Supp. 2d at 537). In other words, "[a] plaintiff must respond with actual proof[], not mere allegations." *Id.* (second alteration in original) (quoting *Machulsky*, 210 F. Supp. 2d at 537).

2. ***Bowman has not, and cannot, make a prima facie showing that this Court has general jurisdiction over UBA, because it is not at home in Virginia.***

General jurisdiction exists when the nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The contacts that will render a nonresident defendant at home in the

forum state are limited, and for a corporation, the paradigm forums for general jurisdiction are its place of incorporation and principal place of business. *Id.* at 118. Only in an "exceptional case" may "a corporate defendant's operations in another forum . . . be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1552–53 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). In-state business does not, however, "suffice to permit the assertion of general jurisdiction over claims . . . unrelated to any activity occurring in [the forum state]." *Id.* at 1559.

UBA is not incorporated or headquartered in Virginia; it is incorporated and headquartered in Nigeria. (Enebe Decl. ¶ 4.) For this Court to exercise general jurisdiction over UBA, then, this must be an exceptional case: UBA's operations in Virginia must be so substantial and of such a nature as to render UBA at home in Virginia. *See Tyrell*, 137 S. Ct. at 1558. But this is not an exceptional case—not even close. UBA does not have any operations in Virginia, much less substantial ones. Among other things, it is not registered to do business in Virginia; it does not own, lease, or control any assets, real or personal, in Virginia; it does not maintain any offices, branches, or automated teller machines in Virginia; and it does not have any employees or agents in Virginia. (Enebe Decl. ¶ 9.)

In his Amended Complaint, Bowman alleges that UBA does business in Virginia "by offering internet banking services . . . to residents in . . . Virginia." (Am. Compl. ¶ 4.) But this allegation is controverted by UBA's evidence. Though UBA and its New York Branch maintain websites accessible to U.S. residents, those

websites are not directed specifically at Virginia residents. (Enebe Decl. ¶ 8.) The websites provide information about the operations of UBA and the New York Branch, and permit existing customers to access online banking services. (*Id.*) But neither website allows U.S. residents to open new accounts. (*Id.*) And the New York Branch's website plainly states that the New York branch is located in New York, providing the branch's New York mailing address, phone number, and email address under the heading "Contact." (*Id.* & Ex. 3.)

Maintaining a website that allows existing customers to access online banking services cannot be sufficient to confer general jurisdiction over UBA; otherwise, every bank that maintains such a website would be subject to suit in every forum in which the website is accessible. This is the lesson of the Fourth Circuit's recent decision in *Fidrych v. Marriott International, Inc.*, 952 F.3d 124 (4th Cir. 2020). There, the plaintiffs claimed that Marriott was subject to general jurisdiction in South Carolina, even though it was not incorporated or headquartered there. *Id.* at 128, 132. The plaintiffs argued that Marriott had sufficient contacts with South Carolina to make it at home there because: (1) it was registered to do business in South Carolina; (2) it had 63 franchised hotels and 27 licensed or managed hotels in South Carolina; and (3) it maintained a website that permitted online booking and was accessible to South Carolina residents. *Id.* at 128–29, 134.

The Fourth Circuit found these contacts insufficient to render Marriott at home, and thus subject to general jurisdiction, in South Carolina. *Id.* at 134. It reasoned that Marriott's contacts with South Carolina were no different from its

contacts with any other state where it does business, and so to accept the plaintiffs' argument "would mean that Marriott would be subject to general jurisdiction in every state where its hotels are located." *Id.* After all, the Fourth Circuit continued, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (alteration in original) (quoting *Daimler*, 571 U.S. at 139 n.20).

If the plaintiffs could not establish general jurisdiction over Marriott in *Fidrych*, then *a fortiori* Bowman cannot establish general jurisdiction over UBA in this case. UBA's contacts with Virginia are far less than Marriott's contacts with South Carolina. Most significantly, UBA does not transact any business in Virginia. As just noted, it is not registered to do business in Virginia and does not have any offices, branches, or automated teller machines in Virginia. (Enebe Decl. ¶ 9.) Nor does it have any employees or agents in Virginia. (*Id.*) And while UBA and its New York Branch do maintain websites accessible to U.S. residents, those websites do not allow U.S. residents to open new accounts. (*Id.* ¶ 8.) Rather, the websites permit only existing customers to access online banking services in the United States. (*Id.*)

Since UBA's contacts with Virginia do not render it at home in Virginia, Bowman has not, and cannot, make a prima facie showing that this Court has general jurisdiction over UBA.

***3. Bowman has not, and cannot, make a prima facie showing that this Court has specific jurisdiction over UBA, because his claims do not arise out of or relate to its contacts with Virginia.***

For specific jurisdiction to exist, the suit must "arise[] out of or relate[] to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 118. Put differently,

"there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919).

To determine whether specific jurisdiction exits, the Fourth Circuit has developed a three-part test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). The plaintiff must prevail on each part. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

As with general jurisdiction, Bowman has not, and cannot, make a prima facie showing that this Court has specific jurisdiction over UBA. To begin with, UBA has not purposefully availed itself of the privilege of conducting activities in Virginia. Again, it is not registered to do business in Virginia; it does not own, lease, or control any assets, real or personal, in Virginia; it does not maintain any offices, branches, or automated teller machines in Virginia; and it does not have any employees or agents in Virginia. (Enebe Decl. ¶ 9.) And though UBA and its New York Branch maintain websites accessible to U.S. residents, those websites permit only existing customers to access online banking services in the United States. (*Id.* ¶ 8.) What's more, the websites are not targeted at Virginia residents in particular. *See Fidrych*,

952 F.3d at 142 (holding that Marriott's website, which allowed South Carolina residents to "input their travel dates to view available hotels and to book rooms online," was not enough to support the exercise of specific jurisdiction over Marriott in South Carolina because the website was "not directed at the residents of any particular forum").

Second, and most important, Bowman's claims against UBA do not arise out of or relate to its contacts with Virginia.[4] In the Amended Complaint, Bowman alleges that UBA has contacts with Virginia through its "internet banking services." (*See* Am. Compl. ¶¶ 4–5.) But Bowman's claims do not arise out of or relate to those services. (*See id.* ¶¶ 16–27.) In fact, it appears that Bowman was not even aware of UBA, much less its internet banking services, until after filing his original Complaint against Citibank. (*See* Compl. ¶¶ 5–16, ECF No. 1-1.) UBA's internet banking services, then, cannot support the assertion of specific jurisdiction over UBA. *See James*, 433 F. Supp. 3d at 940 ("[A] defendant's contacts with the forum state that are entirely unrelated to the plaintiff's claims cannot serve as the basis for a proper exercise of personal jurisdiction.").

And third, the assertion of personal jurisdiction over UBA would not be constitutionally reasonable. For starters, UBA does not have any offices or branches in Virginia, nor does it have any employees or agents in Virginia. (Enebe Decl. ¶ 9.)

[4] Since UBA has not purposefully availed itself of the privilege of conducting activities in Virginia, the Court need not consider the remaining two parts of the Fourth Circuit's specific-jurisdiction test. *See Consulting Eng'rs*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). Still, for the sake of thoroughness, UBA addresses the second and third parts, which both tip in its favor.

It is an African bank with one U.S. branch located in New York. (*Id.* ¶¶ 4–5.) So litigating this case in Virginia would place a heavy burden on UBA. *See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir.2001). It would also be unfair, for UBA could not have reasonably foreseen being sued in Virginia: It did not reach into Virginia and initiate business with Bowman. Quite the opposite. He reached into New York and initiated business with UBA through his bank, American National. *See Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 445 (E.D. Va. 2015).

Since no part of the Fourth Circuit's specific-jurisdiction test weighs in his favor, Bowman has not, and cannot, make a prima facie showing that this Court has specific jurisdiction over UBA.

* * *

For these reasons, the exercise of personal jurisdiction over UBA would not comport with the due process requirements of the Fourteenth Amendment. Thus, this Court lacks personal jurisdiction over UBA, and the Amended Complaint must be dismissed as against UBA under Rule 12(b)(2).

**B. The Amended Complaint must be dismissed as against UBA under Rule 12(b)(6), because it fails to state a claim against UBA.**

Even if this Court determines that it may assert personal jurisdiction over UBA, the Amended Complaint must still be dismissed as against UBA under Rule 12(b)(6), because it fails to state a claim against UBA.

1. ***To overcome UBA's Rule 12(b)(6) motion to dismiss, the Amended Complaint must allege sufficient facts to state a plausible claim against UBA.***

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And while a district court must accept as true all well-pleaded facts in reviewing the complaint, the same is not true for legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A district court may also consider "documents submitted by the movant if the documents are integral to the complaint and indisputably authentic." *Jones v. Va. State Univ.*, No. 3:19-cv-467, 2020 WL 1674243, at *1 n.1 (E.D. Va. Apr. 6, 2020). And a district court need not accept as true allegations contradicted by such documents. *Veney*, 293 F.3d at 730.

There are at least two documents integral but not attached to the Amended Complaint that this Court may consider in deciding UBA's Rule 12(b)(6) motion to dismiss. The first, attached to Citibank's memorandum in support of its motion to dismiss, shows that Citibank deposited the Transferred Funds into UBA's correspondent account on September 3, 2020. (ECF No. 24-1.) And the second, attached as **Exhibit 4** to Enebe's declaration, shows that UBA deposited the Transferred Funds into Holarem's account on September 4 and that Holarem

withdrew most of them on September 7. These documents are integral to the Amended Complaint because they define the obligations of Citibank and UBA with respect to the Transferred Funds and establish, contrary to Bowman's allegations in the Amended Complaint, that Citibank and UBA followed his wiring instructions as received through his bank, American National.

2. ***The Amended Complaint fails to state a plausible claim for violation of UCC § 4A-207(a) against UBA (Count I), because it followed Bowman's wiring instructions and deposited the Transferred Funds into Holarem's account.***

In Count I of the Amended Complaint, Bowman alleges that UBA violated UCC § 4A-207(a) (Va. Code § 8.4-207(a); N.Y. U.C.C. Law § 4-A-207(1)) by "accepting the payment order of the funds received by it from Citibank because the payment order referred to a nonexistent or unidentifiable person or account." (Am. Compl. ¶ 38.)[5] This claim must fail because, contrary to Bowman's allegations, the payment order did not refer to a nonexistent or unidentifiable person or account. Both Holarem and its account were existent and identifiable. And pursuant to Bowman's wiring instructions, UBA deposited the Transferred Funds into Holarem's account. (Am. Compl. ¶ 18; Enebe Decl. ¶ 10 & Ex. 4.) Bowman may not now complain that UBA violated UCC § 4A-207(a) by doing exactly as he instructed. Count I must thus be dismissed.

[5] It is not clear whether Virginia or New York law applies to Bowman's claims against UBA, and Bowman does not allege one way or the other, choosing instead to rely primarily on the model UCC as opposed to Virginia's or New York's UCC. But the Court need not decide which state's UCC applies because they are identical in all material respects to the model UCC, and so the outcome would be the same regardless of which state's UCC applied. The same is true as to each state's non-UCC law as applicable to Counts II and IV of the Amended Complaint.

3. ***The Amended Complaint fails to state a plausible claim for an injunction against UBA (Count II), because there is no cause of action for an injunction.***

In Count II of the Amended Complaint, Bowman seeks an injunction against UBA under UCC § 4A-503(iii) (Va. Code § 8.4A-503(iii); N.Y. U.C.C. Law § 4-A-503(iii)), prohibiting it from releasing the Transferred Funds pending further order of this Court. (Am. Compl. ¶¶ 44–45.) This claim must fail because there is no cause of action for an injunction in Virginia or New York. An injunction is a remedy, not a cause of action. *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. Nov. 15, 2010). So Count II must be dismissed.

4. ***The Amended Complaint fails to state a plausible claim for violation of UCC § 4A-211(a) against UBA (Count III), because it accepted the payment order before any communication from Bowman cancelling that order.***

In Count III of the Amended Complaint, Bowman alleges that UBA violated UCC § 4A-211(a) (Va. Code § 8.4A-211(a); N.Y. U.C.C. Law § 4-A-211(1)) by "accepting the payment order because [he] cancelled the payment order, and Citibank gave notice of [his] cancellation, before [UBA] accepted the payment order." (Am. Compl. ¶ 47.) This claim must fail because, contrary to Bowman's allegations, he did not cancel the payment order before it was accepted. UBA accepted the payment order and deposited the Transferred Funds into Holarem's account on September 4, 2020—four days before Bowman allegedly canceled that order. (*Id.* ¶ 28; Enebe Decl. ¶ 10 & Ex. 4.) Under UCC § 4A-211(c), "[a]fter a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank

agrees or a funds-transfer rule allows cancellation or amendment without agreement of the bank." Bowman does not, and cannot, allege such an agreement by UBA or such a funds-transfer rule. (*See* Am. Compl. ¶¶ 28–33.) Count III must therefore be dismissed.

5. ***The Amended Complaint fails to state a plausible claim for a constructive trust against UBA (Count IV), because there is no cause of action for a constructive trust.***

In Count IV of the Amended Complaint, Bowman seeks a constructive trust against UBA, preventing it from transferring the Transferred Funds to the impostors who allegedly defrauded him. (Am. Compl. ¶¶ 51–54.) Like Bowman's claim for an injunction (Count II), this claim must too fail because neither Virginia nor New York recognizes a cause of action for a constructive trust. Similar to an injunction, a constructive trust is a remedy, not a cause of action. *In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 719 (Bankr. S.D.N.Y. 2018) *Clarke v. Newell*, No. 1:05-cv-1013, 2005 WL 3157570, at *5 (E.D. Va. Nov. 23, 2005). Accordingly, Count IV must be dismissed.

* * *

Because the Amended Complaint fails to state a plausible claim against UBA, it must be dismissed as against UBA, even if this Court determines that it may exercise personal jurisdiction over UBA.

## IV. CONCLUSION

For the reasons stated above, the Court does not have personal jurisdiction over UBA, and the Amended Complaint fails to state a claim against UBA. UBA thus

requests that the Court grant this motion and dismiss the Amended Complaint as against UBA.

Dated: December 31, 2020

Respectfully submitted,

UNITED BANK FOR AFRICA PLC

By: /s/Justin E. Simmons
Of Counsel

Richard C. Maxwell (VSB No. 23554)
rmaxwell@woodsrogers.com
Justin E. Simmons (VSB No. 77319)
jsimmons@woodsrogers.com
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711

*Counsel for United Bank for Africa PLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2020, I filed the above document (with exhibit) using the Court's CM/ECF system, which will send notification of the filing to the following counsel of record:

Gary M. Bowman
2728 Colonial Avenue, Suite 100
Roanoke, VA 24015

*Pro se Plaintiff*

Joseph M. Rainsbury
MILES & STOCKBRIDGE
919 E. Main Street, Suite 1100
Richmond, VA 23219

*Counsel for Defendant*
*Citibank, N.A.*

/s/Justin E. Simmons